Honors, may it please the court, I'm Aaron Van Oort for the appellants. The Federal Meat Inspection Act charges the Secretary of Agriculture with establishing standards to ensure that meat labels are not false and misleading. What if the Secretary gets the standard wrong? Plaintiffs argue that if that happens, the states can come in and enforce the right standard. That's not correct. The plain language of the Act says that states can't impose any standards, any requirements in addition to or a different one than the Secretary... What if the state with the same general standard decides it first? And then the Secretary says, oh, we disagree with the state. Doesn't matter. Whatever the Secretary makes, whatever requirements the Secretary makes... I don't think you've got a case for that. I think that's... We have a case, I guess it's Bates, that says if a Secretary has decided, the state is stuck with that interpretation of federal law, which is this case. But it doesn't decide... What if the state, if the standards appear to be the same, and the state decides it first? The state here, it's undisputed the state didn't decide this first, Your Honor. I know, it's just, this to me, this is a hole in the thing that bothers me. Okay, so this statute says the states can't set any standards different than or in addition to the ones that the Secretary said, so they can't even add to it. My hypothetical, it isn't in addition to when the decision is made. But the Secretary doesn't like it. Yeah, I mean, I suppose... I think that's an open question. Yeah, I suppose, Your Honor, that if there are situations... So what we have is we have this very broad standard, false and misleading, that somebody has to do something to make it specific. And it's a question of law. No. Well, it's a mixed question. It's a question of fact and policy, what the standards are. That's the way it's always been treated, so it's reviewed. Whether a particular product is false and misleading... Is a question of fact. Pardon? It's a question of fact, Your Honor. That's the way it's been treated. Your Honor, in a recent case under the common law, Your Honor said that we've always understood false and misleading to be a question of fact as applied. I know that. Okay, so that's here. So Your Honor is asking the scenario, so what if there's a scenario where all there is is there's the general standard, false and misleading. The Secretary hasn't made it specific. And a state does come in and makes it specific, right? I think that's a fair question about whether there'd be preemption there or whether it'd be consistent. That's not this case, of course. The Secretary made this specific. I just, I can see when it comes to writing an opinion on this case, it seems to me even if we agree with you in the end, this one is not, we should not anticipate that situation. No, I agree. This can be a very narrow case, Your Honor, in a very narrow situation because here's what I think the general rule is. The Secretary can be reviewed under federal law, but he can't be contradicted by state law. So when the Secretary did something here, he set a standard for product of the USA and said it's a product of the USA as long as it's processed here. That's the standard. If somebody wants to challenge that, they can bring an APA suit. The Secretary's not infallible. It would be an abuse of discretion, arbitrary and capricious review. And that's what would happen. But what you can't do is you can't come in with state law and contradict this standard. The state may think it's wrong, but the state's only authority is to cooperate with the Secretary. Suppose there's no connection whatsoever to the United States, none at all. The meat wasn't there. It's not packed there. It's not produced there. And the Secretary says, you know what? We're going to allow you to say product of the USA because it's sold here. Same result? On preemption, yes. That would still preempt because the state would be setting a different requirement. The argument in that case would be is that the Secretary abused his discretion in saying that it's a product of the USA if it's that tenuous. And then you'd go up and, you know, and this is the difference between a state lawsuit like this one and that federal suit. The federal suit would have to be decided on the administrative record. You'd have to have the Secretary there. That would be the record. And the question would be, how does that stand up on the record that the Secretary had? Was there substantial evidence or not? This case, no matter what it does, can't answer the question about the Secretary because we don't have the administrative record. There won't be the administrative record. The Secretary's not here. The only question presented here is whether the state standard is consistent with the federal one or not. It's not a question of whether the federal standard is right in this state, in this context. I mean, and you just think about it. So preemption can be decided by state courts because it doesn't involve any question of whether the federal actor got it right. That's why there's state jurisdiction. To review whether the federal actor got it right, you need a waiver of sovereign immunity. That's the APA. That's in federal court. Right? And you can't do that in state court. You can't do it under state law. The only question presented is whether the state is consistent with or not. Counsel, what's the interaction, if any, between Section 678 and Section 607 in the federal statutes? Section 607D, which is what the district court pointed to, doesn't say anything about the interaction between state and federal law. It doesn't even mention the states. It sets the substantive standards for producers of meat. It says you can use labels if they're not false and misleading and they're approved by the secretary. You can't do your own false and misleading rule review. You need the secretary to. So it sets the substantive standards. It does not say anything about what happens once the secretary has set a standard for what is false and misleading and then a state disagrees with it. That's Section 678 where that's clearly established there. Did the federal government set a standard for what is false and misleading? It did. And we go through all of the discussion on this. The history of product of the USA, Your Honor, goes back for about 30 years or more and it's flipped back and forth. But the standard in place at the time this was there was in the Food Safety and Inspection Services Labeling and Policy book. The standard said you can use product of the USA as long as it's processed here. And that was formally incorporated into the regulations. So it's 9 CFR 412.1 and .2 are the formal regulations that set up the labeling regime and they expressly incorporate that policy book. So there was a standard here expressed and set by the secretary at this point in time when you're here. Now, the secretary has changed it. As of January 1st of this year, there's a new standard and, of course, going forward, everybody's complying with that standard. I just want to say... Your knowledge, has it been challenged? The new standard has not been challenged to my knowledge. And I just want to quickly respond. There's a suggestion by the plaintiffs that the promulgation of the new standard and the record for that somehow casts the old standard in doubt. But that's just wrong as administrative law. The old standard isn't reviewed on the new record. The old standard would be reviewed for substantial evidence on the old record if you ever did an APA challenge. The new standard is reviewed on the new record. So the fact that the secretary has changed doesn't cast anything about the old one in  But even more clear for this case, it doesn't matter right now for preemption whether the old standard was even right or wrong. As long as it was made under the chapter, and it was, because Congress authorized the secretary to be the one that creates the regulations. Section 602 says to decrease the burdens on commerce, we are giving the secretary the authority to regulate and the states the ability to cooperate. Does it make a difference if this came out in a policy book? You know, when you go into administrative law, you realize that agencies have their own names for everything, and this is the first time I probably encountered a policy book. You make the argument that it's in the regulation that they're allowed to issue the policy book. But I mean, what about a letter? You know, what if the secretary issues a letter that says this is how we're going to do it? Does that make any difference, the informality at which the secretary is operating? I think there would be scenarios, Your Honor, where it definitely would be at the edges. And there are some cases, it depends on context now. We don't have to worry about legal interpretations anymore after Loper-Bright. So this is something different. This is where an agency has actually taken an action that has some force on the regulated entities, and the question is how formal does it have to be there? As Your Honor pointed out, I think whatever it is, this case meets it because there's a formal regulation saying this is how we're going to do the standards and we're going to incorporate the labeling book. So wherever the line is, it's here. I can see a different statute where the language in the statute here is preemptive force applies to all requirements made under this chapter. And so as long as the secretary is making it under the chapter, it's directly in the congressional line. If you didn't have that language, I think it's going to be closer questions. So for instance, FFRA doesn't refer to requirements made under the chapter, it refers to things required under the chapter. And there may be some difference there. I know there's going to be a lot of really close examination of that language here in a couple of months in the Supreme Court. But the language here refers to requirements made under the chapter, which is very broad. The Supreme Court case here is the Harris case. It wasn't a labeling preemption case, but the Supreme Court recognized preemption is really broad here because it applies to everything in addition to or different from requirements made under the chapter. And that's what we have here. So is it your position that if there is approval, then that takes approval of a label, then that takes care of the question of false or misleading? Not in, well, let me distinguish two different things, Your Honor. There are two questions. One is, did we comply with the federal standard? The second is, is the federal standard the right standard? In this case, the plaintiffs concede that we complied with the federal standard. Every time we used Product of the USA, we at least had processed it here. So the question of whether the Secretary's determination that you actually complied with the regulation is conclusive, I don't think it's presented here because it's conceded that we did comply. The separate question is, did the Secretary set the correct standard? And that's the one that's just wiped out on preemption, Your Honor. Does that get to Your Honor's question? Well, it goes to the 607 interpretation as to whether or not there's two things required there or is it and or is it or in terms of approval and the potential for false and misleading information. Two things are required. It has to be not false and misleading and it has to be approved by the Secretary. But the Secretary is actually active on both sides of that. It's not just the approval that's at issue here. The Secretary set the standard for what is false and misleading, right, and the state is trying to set a different standard for what's false and misleading in the context of Product of the USA. So the Secretary's action matters on that side of the and and that's the side that's at issue here. That leads me to something I want to ask you about anyway in both parties. We only have to decide this case. These respective clients are going to be fighting this war forever and ever, perhaps or not. So everybody wants our view on the broadest issues possible and et cetera. But to decide this case, plaintiff's seat injunction and damages, right? And the injunction, I think both sides maybe agree or at least one side has suggested the new the new reg moots the injunction. Yes, it does. So we have the damages. Yes. And the damages, if if we were to determine that the damages are barred by reliance on the federally approved standard, regardless of whether it was the right standard, isn't the case over? Yes, it would be over. So why isn't that a way to cut through the fog, so to speak? I think you could, Your Honor. Nobody has briefed it, but we thought about that and we agree that it is. And here's the reason we didn't brief it as a standing, Article III standing issue, at least from our perspective. I'm not sure it's standing. Or mootness. Yeah, whatever. I think if it were, if the law were clear before this case ever came up, that no matter what happened, you couldn't retroactively go back and get damages, I think there would be a standing problem. At the time this case was filed, though, the old regulations were still in place, products were still being sold, and it wasn't clear, because no court has held whether you can retroactively go back and get damages. But I agree with you, Your Honor, that this scenario, this scheme is not a trap for producers to rely on, where if they rely on the Secretary's regulation and use the label like he said, and then a court later says it was wrong, that then they can retroactively be sued for  damages. I don't think that's at all consistent with what the Act said. So I agree, Your Honor, that that's right, that you could cut through it that way. You would be doing something new that a court hasn't done if you were to decide it that way. I'm going to reserve my 10 seconds. Okay, we don't have a split argument, or do we? We do, Your Honor. Okay. My name is Blair Dunn. May it please the Court. And I will be splitting time with Mr. Sweedland from the South Dakota Attorney General's Office. As I said, may it please the Court, I think that this is best drilled down to already at this point. I think that the standard is the question, and what is the standard and what constitutes the standard is where we start. And specifically, the question of whether or not a guidance document is something that we can rely on as the standard that they're saying that the Secretary has implemented. I would argue that this Court's decision in Spirit Lake probably takes that a different direction than what the appellants here argued for. In what Spirit? Spirit Lake, this Court's decision in Spirit Lake. And I would argue that Spirit Lake points to the fact and the standard is what the statute says in 607D and what the Secretary already said in his regulations that were duly adopted pursuant to a lawful process, pursuant to the APA, in the CFR, which defines what is misbranding. And I think if you look at those two and you use the conjunctive of the and, I think ultimately we get to the point where we can then tie back, as Your Honor pointed out, to 678 and the fact that that statute discusses the cooperative federalism of discussing misbranding. But doesn't it, so on that point, I don't buy that argument because you're talking about really enforcement more than anything else because it talks about when the meat gets outside the establishment, which is like the meatpacking plant. And clearly, what it's contemplating is the state to come in because the feds don't have enough personnel, but the states can come in and say, hey, you're misbranding that. You need to take that back and change it. I don't think they're saying, no, the states can come in and put an inconsistent standard or a different standard in. Your Honor, I would, let's take it away from misbranding for just a second. So the other thing that's discussed in the statute, which is adulterated, and that's preventing the public health harm of adulterated, I think that's a good place to compare those. You can look at the two and we have a definition for misbranding in 607, which we use the conjunctive and they're arguing for this court to do the disjunctive. But if you were to look at adulterated, and let's just use this as a hypothetical, the meat is coming out of a federally approved plant, the feds say everything's good to go, but it's making people sick when it hits the supermarkets. What they're asking for is essentially to say, well, the secretary approved that through that plant, and even though it's coming out and it's adulterated, the states have no role in this. And Mr. Sweedler's going to talk more about the state's role in this, but essentially what we're saying is even though it's adulterated, because it's been approved by the secretary, that it's okay and the states can't do anything to stop that adulterated meat from reaching the public and putting them in harm's way. What if there's a disagreement about what's adulterated? Suppose the secretary comes out and says if it makes one person sick out of a thousand, that's an acceptable risk, and the states come in and say, nope, nobody can get sick. We're going to pull all this meat off the market. And I think that's exactly what Congress was concerned about. Sometimes the secretary gets it wrong, and that's why in 678, you do have the federalist argument there. You do have the state having a cooperative role recognized in the preemptive statute. But the problem with that is that undermines the uniformity that's contemplated by the statute even. And then we have 50 laws. If it's inconsistent, yes, but again, if it's adulterated and it is causing some amount of harm and the secretary has that definition wrong, that question of policy wrong, the Congress specifically addressed adulterated and misbranding as the two areas. But I don't think that helps you. Suppose that Minnesota says one out of 10,000 people get sick. That's where we draw the line. And Iowa says one out of 100,000 people get sick. And South Dakota says one out of 1,000 people get sick. And the secretary says one out of 100. You still have a problem because you have potentially 50 state laws that have different definitions of adulterated meat. Right. And the distinction here is that we have a CFR that says that this is mislabeling that the secretary has adopted. What's different is that his policy book, his non-APA process adopted policy enforcement guidance is inconsistent with the statute, it's 607D, and it's inconsistent with the regulations defining what misbranded is. So that's the country of origin. I don't understand why it's inconsistent with the statute. Because the statute, because essentially what the definition... The statute doesn't say there can be 50 different standards. The statute says what the standard is though, is that it gives a false impression, right, of country of origin. And perhaps I misspoke. The CFR defines false country of origin, right, or misbranding for country of origin. That's in the CFR that the secretary did. So let's just set the statute to the side for a minute. The secretary has said in 9 CFR 412, this is what is misbranding as the country of origin. And then it issues a guidance document that is wrong from that. So what they're asking for is for you to give effect over the regulation to his guidance document. Now I understand opposing counsel made the argument that the policy book is actually mentioned in the regulations as controlling branding and labels. Is that wrong? Or is it completely extra regulatory and extra statutory? It's guidance, right? I think that's the point. It's not actually statutory. It's not a force of law. It is a, we've adopted this without any input from the states or from the public, to your point about the adulterated 1 in 10,000 versus 1 in 20,000. That goes through a process for the regulations. This doesn't. This guidance document doesn't go through that. There's no input from the states as to what the standard is. And the ACA gives you all different ways to challenge it. Right, but under Bates... Under administrative law, that should apply. It should, except that we also have those, we have Bates and Medtronic, where the United States Supreme Court can say that you can sue... Bates and Bates does not help you, at least not with this judge. I understand that, Your Honor, and I respectfully disagree. Bates involves suing private defendants for violating FRFRA. It doesn't, that doesn't stand for the proposition that the only place to go is through the APA and sue the Secretary. And the Supreme Court has said that was proper by virtue of the fact that case got there. Same for Medtronic and Cipollone and a variety of other tobacco-related cases. Well, look, I don't like policy books and guidances and all that. I think that they're very difficult for people to comply with. But under case law, I think when you have a regulation that points to a policy book and the Secretary issues a policy book in an express preemption case, that governs whatever area the policy book covers. Am I wrong about that? Or is there a case that suggests the policy book is completely ineffective and that only a regulation, even if it mentions the policy book, can govern a situation like this? No, I think that's an interesting point. What I would say, to kind of twist that a little bit, is to say if you look at what happened. This is the reason we cite to the new standard, right, that was adopted, and point to the fact that in the preamble or in the discussion of the impetus, not only did they have the study that showed that the American public is being deceived and this is false and misleading, but you have them citing to the same regulation saying, you know, we had this guidance document, it was causing these problems, here's the CFR that was in place while this guidance document was also in place. We're pointing back to that, pointing out that this guidance document, they literally say was inconsistent with the CFR. So again, we're still trying to elevate this guidance document over the clear indication from the agency now that the guidance document was wrong. But don't ultimately, don't agencies in this type of situation where you have a broad standard, either under the statute or under the regulation, they almost have to issue a policy book. I mean, we're not going to put in regulations labeling for every item in the United States into the CFRs. They'd be, you know, hundreds and hundreds and hundreds of volumes. And so this is kind of the way it works. So why shouldn't we give credit to that under preemption analysis? Because it doesn't get the force of law, right? That's the distinction. And Spirit Lake, again, goes to that point. You don't give it the same weight and effect that you would the CFR or the statute. And that's our point, is that ultimately, yes, the agency does this. And it is a necessary thing to navigate the bureaucratic morass that we have in the federal government and at the state level, even. But it can't just trump what the statute's intent was in 602. And it can't trump what the statute says in 607. And it can't trump what the CFR actually says. Like we say, sometimes the secretary gets it wrong. And that's the reason Congress, I'll tie it back to 678. And that's the reason that Congress turns to cooperative federalism and saying the states are going to pick up the slack. When it comes to just these two things, they don't say anything the secretary does under the Federal Meat Inspection Act, we're going to give you concurrent jurisdiction. It's just those two very important points, one of which is at issue here, which is misbranding. Counsel, why shouldn't we find the Tenth Circuit's Thornton case persuasive? I think that the dissent is far more persuasive. I think it does a better job of statutory analysis in 607 and then in the larger context of the statutory intent and deciding the preemption issue. I think that what we would argue is that the Thornton court, the majority, went awry on that use of the conjunctive and changing it without going through a proper statutory analysis from and to or. And I think the Thornton opinion falls apart, the majority opinion falls apart at that juncture. And I don't think it's persuasive after that. Now, I come back to where I was with opposing counsel and that is that we're a panel of three judges deciding a particular case. We are not the staff of a congressional committee listening to the legislative policy positions on both sides. So why isn't this case done? The new reg moots injunctive relief and there's a clear defense to damages in reliance, justifiable reliance on federal law. Well, I don't remember reading from the briefing of the appellants that justifiable reliance was a... And certainly not... Counsel said we didn't argue, we didn't argue, we talked about it. Right. Probably talked about it with you. Right. Why isn't that the answer for our panel in this case? Because I don't think that the facts support that at this point and at a Rule 12 stage, I don't think at a Rule 12 stage we can get to that. I thought you conceded that they acted inconsistent with federal law. I'm sorry, could you... Their labeling is consistent with federal law. No, I don't think I argued that their labeling was consistent. Somewhere in the pleadings or briefs, that's undisputed. No, not that we agree it's undisputed. They are completely inconsistent as our point, they are misbranding. They can't be consistent with federal law if they're misbranding. They're consistent with the approval of the Secretary's approval of the products in question. They're consistent... But this is my point. They're consistent with a guidance document. They are not consistent with the law. And those are not... This court should not muddle those two. They're not the same under Spirit Lake. We know that they're not the same. Wait, wait, wait. I'm talking about a practical defense to a tort claim for damages. We reasonably relied on the federal government's statement of what we could do. We did it. We don't care about policy guidance. If someone doesn't like the policy guidance because it's not in the CFR, they can go... The APA gives them all kinds of remedies. We just put products out consistent with what the FMIA required us to do. Well, I would... Your Honor, it's not before the court because the district court dismissed it, but we pointed out that they didn't just justifiably rely on this. As part of our RICO claims, we allege facts that they participated in achieving this in Right. So they lobbied for it. Both sides fight this everywhere. So the question of damages then becomes one of facts later in the case, I guess would be the argument I would leave with that then. And whether or not we are allowed to do that, whether or not they justifiably relied... That's not the question in the damage action. But your question is, did they justifiably rely? Right? Of course they did. I don't think that's a fact that the court can assume at this stage here today. Your Honor, I would like to reserve... You can't rely on that until you go get Congress writing it in the statute. Big woo. Okay. Well, your Honor, I would disagree respectfully, and I would like to reserve the remaining two minutes for the state's arguments, if I could please. Yeah. That's very appropriate. Thank you. Thank you, Your Honor. Your Honors, in the time remaining, I'd just like to address Judge Strasse's point that, you know, you've got one state that says one in 10,000, another state that says one in 50,000. But what we have here really is a very clear set of laws that say you have to be not misleading when it comes to the particular origin of your product. And the origin of these products is by no means in the United States of America. It's Mongolia or Mexico or wherever. And so, do they reasonably rely on an erroneous action by the Secretary? The Swift & Company Court said, no. New York could come in and they could stop this distribution of falsely labeled imitation frankfurters. And the state can do the same thing here. And especially when we have a very particular standard that we're looking at. So if, for example, the USDA was enforcing a one in 10,000 standard where the statute says it's a one in 1,000 standard, the state can come in and they can take action and they can stop it. They can stop the distribution of this adulterated meat. Why wouldn't they? Why wouldn't it get it back to earlier? Why wouldn't that just be a clear conflict with the statute and you bring an APA action? Not bring a common law action? Well, sometimes you can do that. Sometimes you have the luxury of time to do that. Other times you don't. So I think that's why the example of the adulterated meat is very important because you don't have the luxury of time in those circumstances. You got to come in and you got to act. And after that... You didn't have time here? We had... We weren't aware of it, first of all. So we weren't even aware of this was going on until we were made aware of this lawsuit. So I would say no. We didn't have any time at all until we found out about it. You weren't aware of this labeling issue until... Not until this lawsuit. And then, you know, there's more than one way you can go about it. There's more than one way to skin a cat, but that doesn't mean you have to do it the defendant's way. Just like the New York court found in Swifton Company. New York's administrative agencies and regulatory authorities could come in and say, nope, you can't sell this. It is very clearly a violation of federal law, just as their product is very clearly a violation of federal law under the FMIA in that it is false and misleading in regard to the particular of its origin. If there's no further questions, I will sit down. Thank you. Thank you. I'll give you a minute for rebuttal. Thank you, Your Honor. I know you folks could talk about this for a long time, but you are helping, all of you. The rule on preemption is that the Secretary's standards can be reviewed under federal law, but not contradicted by states' law. States can cooperate, but they have to be consistent with the Secretary's standards. They can't contradict his standards. They can't correct his standards. If all it took to ignore the Secretary's standards was to say he got the standard wrong, then the whole idea of national standards would be a joke, because everybody's going to come in and say he got it wrong, and then you're in litigation, and the whole point of having a national system would be eliminated. In this case, the policy book is referred to by the regs, and it's made concrete in the approval of the labels, and so there's an actual specific action that's not nebulous. For all these reasons, Your Honor should reverse and hold that these claims are preempted. Thank you. Thank you, counsel.